# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | )  OCT 16 2017 |
| *(Briefly describe the property to be searched or identify the person by name and address)* | )  CLERK U.S. DISTRICT COURT<br>)  WESTERN DISTRICT OF WASHINGTON AT TACOMA |
| Facebook Users Account: ian.coffey.54 (User ID 100001452204914); and harli.brume (User ID 100000236530942) | )  Case No. |
| | )  MJ17-5177 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Affidavit and Attachment A, attached hereto and incorporated herein.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments A and B, attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | | *Offense Description* |
|---|---|---|
| 18 U.S.C. § 2242 | Sexual Abuse | |

The application is based on these facts:

See Affidavit of Special Agent Eric Claire, Army CID, attached hereto and incorporated herein.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Eric R. Claire, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _10/16/17._

_____
*Judge's signature*

City and state:  Tacoma, Washington

J. Richard Creatura, United States Magistrate Judge
*Printed name and title*

1

**AFFIDAVIT**

2

3   STATE OF WASHINGTON        )
                               )   ss
4   COUNTY OF PIERCE           )

5

6   I, Eric R. Claire being first duly sworn, hereby depose and state as follows:

7

**INTRODUCTION AND AGENT BACKGROUND**

8

9        1.      I make this affidavit in support of an application for a search warrant for

10  information associated with Facebook Users:

11              a.      ian.coffey.54" (User ID 100001452204914); and

12
                b.      harli.brume" (User ID 100000236530942)
13

14  (hereinafter the "SUBJECT ACCOUNTS") that are stored at premises owned,

15  maintained, controlled, or operated by Facebook, a social networking company

16  headquartered in Menlo Park, California.  The information to be searched is described in

17  the following paragraphs and in Attachment A.  This affidavit is made in support of an

18  application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

19  2703(c)(1)(A) to require Facebook to disclose to the government records and other

20  information in its possession pertaining to the subscribers or customers associated with

21  the user ID.

22       2.      I have been employed with the U.S. Army Criminal Investigation

23  Command (CID) since June of 2008.  As a CID Special Agent, I am empowered to

24  investigate and enforce violations of the federal criminal statutes, including Title 18 of

25  the Unites States Code committed on military installations.  During my tenure as a

26  Special Agent, I have conducted and participated in numerous criminal investigations of

27  criminal misconduct, including, but not limited to, homicide, larceny, fraud and violent

28  crime.  During the investigation of these cases, I have executed, or participated in

AFFIDAVIT OF SA CLAIRE - 1
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  numerous search authorizations and search warrants.  I completed the U.S. Army CID

2  Apprentice Special Agent Course, which consisted of training on civil and military laws,

3  investigation procedures and techniques, crime scene processing and other forensic

4  training.  I have also been certified or trained in the following areas:  Protective Services,

5  Child Abuse Prevention and Investigative Techniques, Hostage Negotiations, Reid and

6  Associates Interview and Interrogation Course, Kinesics Interview and Interrogation,

7  Special Victims Capabilities, and Counter Surveillance Investigations.  Furthermore, I am

8  currently assigned to the Special Victims Unit and conduct investigations into cases of

9  adult and child sexual assault and a number of other criminal matters.   I am credentialed

10  and authorized by the positon to request search warrants in the federal system.

11        3.      The facts in this affidavit come from my personal observations, my training

12  and experience, and information obtained from other agents and witnesses. This affidavit

13  is intended to show merely that there is sufficient probable cause for the requested

14  warrant and does not set forth all of my knowledge about this matter.

15        4.      Based on my training and experience and the facts as set forth in this

16  affidavit, there is probable cause to believe that violations of 18 U.S.C. §§

17  2242(2)(Sexual Abuse) and 2244(b)(Abusive Sexual Contact) have been committed by

18  the subscriber or customer associated with Facebook User "ian.coffey.54," ID

19  100001452204914, against Facebook User "harli.brume," ID 100000236530942, and that

20  there is probable cause to search the information described in Attachment A for evidence

21  of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## SUMMARY OF INVESTIGATION

23        5.      Since August 2017, CID has been investigating a report of a sexual assault

24  reported by Harli BRUME, an enlisted Soldier holding the rank of Specialist (E-4) who is

25  assigned to Headquarters and Headquarters Battery, 1-37th Field Artillery Battalion,

26  DIVARTY, which is located at Joint Base Lewis-McChord (JBLM), Washington.  The

27  location of the sexual assault occurred on the portion of JBLM that is federal property

28  and within exclusive federal jurisdiction.  BRUME alleged she was assaulted by SPC Ian

AFFIDAVIT OF SA CLAIRE - 2
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   COFFEY (hereinafter "SUBJECT PERSON") who is also assigned to the same Army

2   unit as BRUME. After the incident occurred, the SUBJECT PERSON admitted through

3   Facebook messenger between the SUBJECT ACCOUNTS that he sexually assaulted

4   BRUME.

5       6.      In August 2017, BRUME was interviewed and stated she arrived at JBLM

6   in March 2017 and was thereafter assigned as a medic working in the medical supply

7   office of her unit. Subsequently, BRUME met and befriended the SUBJECT PERSON.

8   Throughout numerous conversations, the SUBJECT PERSON would often seek

9   BRUME's advice concerning his marital difficulties that he was experiencing with his

10  spouse. BRUME and the SUBJECT PERSON eventually granted one another access to

11  the SUBJECT ACCOUNTS around the end of March 2017. Between March 2017 and

12  August 2017, BRUME and the SUBJECT PERSON periodically utilized Facebook

13  messenger to communicate with one another through the SUBJECT ACCOUNTS.

14      7.      Beginning in June 2017, the SUBJECT PERSON began making sexual

15  comments, gestures and jokes within the workplace to BRUME that she found offensive.

16  For example, BRUME remembered one occasion when the SUBJECT PERSON grabbed

17  a catheter and, while pretending it was a penis, began obscenely twirling the catheter

18  around the room. BRUME stated the SUBJECT PERSON then smacked the catheter

19  against her butt after which she told him to stop.

20      8.      BRUME also believed the SUBJECT PERSON to be a "high risk" Soldier

21  based on his past behavioral health and because his supervisors were monitoring him as a

22  suicide risk. The SUBJECT PERSON periodically discussed his mental health and

23  elevated anxiety with BRUME.

24      9.      On 22 Jul 2017, BRUME attended a barbeque social event with various

25  members of her unit to include the SUBJECT PERSON. BRUME did consume alcohol

26  at the event before returning to her residence in the unit barracks located at Room 204B,

27  Building 3672 Railroad Avenue, JBLM, WA. BRUME and her friends continued

28  consuming alcohol at her residence before then visiting a local Karaoke bar located in

AFFIDAVIT OF SA CLAIRE - 3
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    Tacoma, Washington.  BRUME continued to consume alcohol at the bar such that she

2    became heavily intoxicated and, during the interview, could not clearly recall many of the

3    events that transpired at the bar.

4         10.    BRUME does recall that the SUBJECT PERSON was also present at the

5    Karaoke bar.  BRUME has a limited recollection that the SUBJECT PERSON had made

6    arrangements to sleep in another Soldier's room located in the same barracks as

7    BRUME's residence later that night.

8         11.    Once BRUME returned to her room, she was both intoxicated and tired.

9    She took a shower and changed into both a shirt and a pair of shorts before preparing for

10   bed.  BRUME stated the SUBJECT PERSON knocked on her door and nudged his way

11   into the room while demanding that they discuss his anxious mental state and marital

12   difficulties.  BRUME stated she was reluctant to allow him to remain in her room but

13   eventually relented and began a conversation with him.  She stated she instructed him to

14   sit in her computer chair while she sat on the bed.  BRUME stated the SUBJECT

15   PERSON ignored her request and instead sat adjacent to her on the bed and began to

16   discuss his personal problems.

17        12.    Soon after they began discussing the SUBJECT PERSON's problems, he

18   propositioned BRUME for sex.  Despite her refusal, the SUBJECT PERSON persisted

19   and attempted to convince BRUME to acquiesce by telling her that having sex with him

20   would alleviate his suicidal ideations.

21        13.    While seated next to the SUBJECT PERSON on her bed, BRUME's

22   intoxication and fatigue overwhelmed her and she eventually lost consciousness.

23   Subsequently, BRUME awoke to discover the SUBJECT PERSON on top of her while

24   he was penetrating her vagina with his penis.  BRUME stated she was drowsy and had

25   difficulty understanding the nature of these events but told him to stop and forced him off

26   of her.

27        14.    BRUME somewhat recalls rolling over and once again falling asleep.

28   BRUME stated she was unaware how or when the SUBJECT PERSON left her room.

AFFIDAVIT OF SA CLAIRE - 4
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Upon waking and recalling the incident, BRUME told agents that she was very angry
2  about what had taken place.

3      15.   BRUME recalled the SUBJECT PERSON contacted her shortly thereafter
4  via text message and related that he was sorry for what he did.  The SUBJECT PERSON
5  further acknowledged that the incident should not have happened.  BRUME responded to
6  the SUBJECT PERSON by expressing her anger.  The SUBJECT PERSON then begged
7  her not to say anything about the incident to anyone else and threatened he would kill
8  himself.  BRUME then agreed that she would not reveal his behavior because she feared
9  for his safety.

10     16.   Sometime later, BRUME stated she had a Facebook conversation with the
11  SUBJECT PERSON via Facebook messenger between the SUBJECT ACCOUNTS
12  wherein he expressed remorse for what he did.  When BRUME persisted in her anger
13  towards the SUBJECT PERSON for his actions, he became upset, and wrote, on or about
14  August 1, 2017:  "great, I raped you, just go ahead and ruin my life."

15     17.   BRUME's growing anger towards the SUBJECT PERSON caused her to
16  avoid any thoughts or memory of him.  Ultimately, BRUME deleted all traces of the
17  SUBJECT PERSON from her Facebook account and cell phone to include the text
18  messages and Facebook messenger discussions referenced above.

19     18.   BRUME told agents that the SUBJECT PERSON later notified her that his
20  wife had learned of this sexual incident and, as a result, the SUJECT PERSON's spouse
21  then attempted to commit suicide.  BRUME directed the SUBJECT PERSON to seek
22  assistance elsewhere and has not subsequently interacted with him.

23     19.   In September 2017, agents confirmed the SUBJECT ACCOUNTS were
24  associated with BRUME and the SUBJECT PERSON by reviewing the SUBJECT
25  ACCOUNTS' publicly available information.

26            **FACEBOOK POLICIES AND PROCEDURES**

27     20.   Facebook owns and operates a free-access social networking website of the
28  same name that can be accessed at http://www.facebook.com.  Facebook allows its users

AFFIDAVIT OF SA CLAIRE - 5
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  to establish accounts with Facebook, and users can then use their accounts to share
2  written news, photographs, videos, and other information with other Facebook users, and
3  sometimes with the general public.

4       21.    Facebook asks users to provide basic contact and personal identifying
5  information to Facebook, either during the registration process or thereafter. This
6  information may include the user's full name, birth date, gender, contact e-mail
7  addresses, Facebook passwords, Facebook security questions and answers (for password
8  retrieval), physical address (including city, state, and zip code), telephone numbers,
9  screen names, websites, and other personal identifiers. Facebook also assigns a user
10  identification number to each account.

11       22.    Facebook users may join one or more groups or networks to connect and
12  interact with other users who are members of the same group or network. Facebook
13  assigns a group identification number to each group. A Facebook user can also connect
14  directly with individual Facebook users by sending each user a "Friend Request." If the
15  recipient of a "Friend Request" accepts the request, then the two users will become
16  "Friends" for purposes of Facebook and can exchange communications or view
17  information about each other. Each Facebook user's account includes a list of that user's
18  "Friends" and a "News Feed," which highlights information about the user's "Friends,"
19  such as profile changes, upcoming events, and birthdays.

20       23.    Facebook users can select different levels of privacy for the
21  communications and information associated with their Facebook accounts. By adjusting
22  these privacy settings, a Facebook user can make information available only to himself or
23  herself, to particular Facebook users, or to anyone with access to the Internet, including
24  people who are not Facebook users. A Facebook user can also create "lists" of Facebook
25  friends to facilitate the application of these privacy settings. Facebook accounts also
26  include other account settings that users can adjust to control, for example, the types of
27  notifications they receive from Facebook.

28

AFFIDAVIT OF SA CLAIRE - 6
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

24.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

25.     Facebook allows users to upload photos and videos.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

26.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

AFFIDAVIT OF SA CLAIRE - 7
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

27.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

28.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

29.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

30.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

31.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

32.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

33.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

AFFIDAVIT OF SA CLAIRE - 8
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Some Facebook pages are affiliated with groups of users, rather than one individual user.
2   Membership in the group is monitored and regulated by the administrator or head of the
3   group, who can invite new members and reject or accept requests by users to enter.
4   Facebook can identify all users who are currently registered to a particular group and can
5   identify the administrator and/or creator of the group.  Facebook uses the term "Group
6   Contact Info" to describe the contact information for the group's creator and/or
7   administrator, as well as a PDF of the current status of the group profile page.

8       34.    Facebook uses the term "Neoprint" to describe an expanded view of a given
9   user profile.  The "Neoprint" for a given user can include the following information from
10  the user's profile:  profile contact information; News Feed information; status updates;
11  links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists,
12  including the friends' Facebook user identification numbers; groups and networks of
13  which the user is a member, including the groups' Facebook group identification
14  numbers; future and past event postings; rejected "Friend" requests; comments; gifts;
15  pokes; tags; and information about the user's access and use of Facebook applications.

16      35.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP
17  address.  These logs may contain information about the actions taken by the user ID or IP
18  address on Facebook, including information about the type of action, the date and time of
19  the action, and the user ID and IP address associated with the action.  For example, if a
20  user views a Facebook profile, that user's IP log would reflect the fact that the user
21  viewed the profile, and would show when and from what IP address the user did so.

22      36.    Social networking providers like Facebook typically retain additional
23  information about their users' accounts, such as information about the length of service
24  (including start date), the types of service utilized, and the means and source of any
25  payments associated with the service (including any credit card or bank account number).
26  In some cases, Facebook users may communicate directly with Facebook about issues
27  relating to their accounts, such as technical problems, billing inquiries, or complaints
28  from other users.  Social networking providers like Facebook typically retain records

AFFIDAVIT OF SA CLAIRE - 9
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    about such communications, including records of contacts between the user and the

2    provider's support services, as well as records of any actions taken by the provider or

3    user as a result of the communications.

4         37.     Therefore, the computers of Facebook are likely to contain all the material

5    described above, including stored electronic communications and information concerning

6    subscribers and their use of Facebook, such as account access information, transaction

7    information, and other account information.

8                    **PRIOR EFFORTS TO OBTAIN EVIDENCE**

9         38.     I understand that the contents of the Facebook accounts identified above

10    can only be obtained, in the Ninth Circuit, by means of a search warrant issued under

11    authority of 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and Federal Rule of

12    Criminal Procedure 41(e)(2)(b). To my knowledge, there have been no prior attempts to

13    secure a search warrant to search and seize records for the SUBJECT ACCOUNTS.

14    **PROTOCOL FOR SORTING SEIZABLE ELECTRONICALLY STORED**

15                              **INFORMATION**

16         39.     In order to ensure that agents are limited in their search only to the

17    SUBJECT ACCOUNTS (and any attachments, stored instant messages, stored voice

18    messages, documents, and photographs associated therewith); in order to protect the

19    privacy interests of other third parties who have accounts at Facebook; and in order to

20    minimize disruptions to normal business operations of Facebook; this application seeks

21    authorization to permit agents and employees of Facebook to assist in the execution of

22    the warrant, pursuant to 18 U.S.C. § 2703(g) as follows:

23          a.    The search warrant will be presented to Facebook, with direction that it
24              identify and isolate the accounts and associated records described in
             Attachment B.
25

26          b.    Facebook will also be directed to create an exact duplicate in electronic
             form of the accounts and records specified in Attachment B, including an
27              exact duplicate of the content of the specified accounts.

28

AFFIDAVIT OF SA CLAIRE - 10
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

c. Facebook shall then provide an exact digital copy of the contents of the accounts and records specified in Attachment B, to me or to any other agent of CID. Once the digital copy has been received from Facebook, that copy will, in turn, be forensically imaged and only that image will be reviewed and analyzed to identify communications and other data subject to seizure pursuant to Attachment B. The original digital copy will be sealed and maintained to establish authenticity, if necessary.

d. I and/or other agents of CID and/or other federal law enforcement agencies will thereafter review the forensic image, and identify from among that content those items that come within the items identified in Attachment B, for seizure. I and/or other agents of CID and/or other federal law enforcement agencies will then copy those items identified for seizure to separate media for future use in the investigation and prosecution. The forensic copy of the complete content of the accounts will also then be sealed and retained by CID and/or other federal law enforcement agencies and will not be unsealed absent Court authorization, except for the purpose of duplication of the entire image in order to provide it, as discovery, to a charged defendant.

e. Analyzing the data contained in the forensic image may require special technical skills, equipment, and software. It could also be very time-consuming. Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keywords used originally need to be modified continuously, based on interim results. Certain file formats, moreover, do not lend themselves to keyword searches, as keywords search text, and many common electronic mail, database, and spreadsheet applications, (which may be attached to email) do not store data as searchable text. The data is saved, instead, in proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well. Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.

f. All forensic analysis of the image data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Attachment B to the warrant.

AFFIDAVIT OF SA CLAIRE - 11
USAO # 2017R01025

## **CONCLUSION**

40.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2242(2)(Sexual Abuse) and 2244(b)(Abusive Sexual Contact) have been committed by the subscriber or customer associated with Facebook User "ian.coffey.54," ID 100001452204914, against Facebook User "harli.brume," ID 100000236530942, and that there is probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

41.     Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## **REQUEST FOR SEALING**

42.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public

//
//
//
//
//
//
//
//
//

AFFIDAVIT OF SA CLAIRE - 12
USAO # 2017R01025

1 | nor known to all of the targets of the investigation.  Accordingly, there is good cause to
2 | seal these documents because their premature disclosure may seriously jeopardize that
3 | investigation.

ERIC R. CLAIRE, Affiant
Special Agent, CID

SUBSCRIBED and SWORN to before me this 16th day of October, 2017.

J. RICHARD CREATURA
United States Magistrate Judge

AFFIDAVIT OF SA CLAIRE - 13
USAO # 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook users:

      a.     ian.coffey.54," (User ID 100001452204914); and

      b.     harli.brume," (User ID 100000236530942)

that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

ATTACHMENT A - 1
USAO No. 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose and the government will seize the following information for each user ID listed in Attachment A that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2242(2)(Sexual Abuse) and 2244(b)(Abusive Sexual Contact) involving Facebook users "ian.coffey.54" (User ID 100001452204914) and "harli.brume" (User ID 100000236530942) between March 1, 2017, and August 31, 2017:

    (a)    any and all Wall posts, private messages, status updates, chat history, friend requests, or other information exchanged between Facebook users ian.coffey.54," (User ID 100001452204914) and User "harli.brume," (User ID 100000236530942); and

    (b)    any and all IP logs, including all records of the IP addresses that logged into the SUBJECT ACCOUNTS and the dates and times such logins occurred that correspond to any and all Wall posts, private messages, status updates, chat history, friend requests, or other information exchanged between Facebook users ian.coffey.54," (User ID 100001452204914) and User "harli.brume," (User ID 100000236530942).

ATTACHMENT B - 1
USAO No. 2017R01025

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800